Joseph A. Kaufman, No. 228319
**JOSEPH KAUFMAN & ASSOCIATES, INC.**
54 E. Holly Street
Pasadena, CA 91103
Telephone: 626-250-0405
Facsimile: 626-768-7066
joe@lemonlawaid.com

Attorneys for Plaintiff KRISTY KOHNDROW

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTY KOHNDROW, an individual,<br><br>            Plaintiff,<br><br>    v.<br><br>FORD MOTOR COMPANY, a Delaware corporation, and DOES 1 through 10, inclusive,<br><br>            Defendants. | Case No. 5:23-cv-04354-PCP<br><br>**PLAINTIFF KRISTY KOHNDROW'S MOTION FOR $46,708.15 IN ATTORNEY'S FEES AND COSTS**<br><br>Complaint Filed:    June 20, 2023<br><br>**HEARING DATE:    June 13, 2024**<br>**TIME:          10:00 a.m.**<br>**Dept:          8** |

### TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on June 13, 2024, at 10:00 a.m. in Department 8 of the Northern District of California's San Jose Courthouse, located at 280 South First Street, San Jose, CA 95113, Plaintiff Kristy Kohndrow will and hereby does move for an award of attorneys' fees and costs in the amount of $46,708.15 as the prevailing party after the successful prosecution of a Song-Beverly Consumer Warranty Act claim.

1      This Motion is based on Plaintiff's acceptance of a Rule 68 Offer of Judgment,
2   where it was agreed that Defendant Ford Motor Company ("Ford") would
3   repurchase Plaintiff's defective vehicle and pay her reasonably incurred attorney's
4   fees and costs. Declaration of Joseph A. Kaufman ("Kaufman Decl."), ¶ 2, Ex. 1-3.
5   The Judgment states that Plaintiff's reasonable attorney's fees and costs would be
6   determined by a noticed motion with this Court. *Id.*, Ex. 3 ("Plaintiff shall retain the
7   right to petition the Court for an award of reasonably and actually incurred attorney
8   fees and costs recoverable pursuant to California Civil Code section 1794(d). In
9   ruling on Plaintiff's fee/cost motion(s), the attorney fees, expenses and costs shall
10  be calculated as if Plaintiff was found to have prevailed in this action under
11  California Civil Code section 1794(d) as of the date of this Offer.").

12      This Motion is made following the conference of counsel pursuant to Local
13  Rule 54-5.  Plaintiff made an effort to resolve the attorney fee and cost issue
14  through negotiation and without a noticed motion, but those efforts proved
15  unsuccessful. Declaration of Joseph A. Kaufman ("Kaufman Decl."), ¶ 4.  Plaintiff
16  therefore moves this Court for an order reimbursing her attorney's fees and costs as
17  the prevailing party.

18      The Song-Beverly Consumer Warranty Act, known as California's lemon law,
19  mandates that car companies promptly resolve lemon law claims. The law is based
20  on the important public policy to quickly and expeditiously remove unsafe and
21  defective vehicles from the road.  The Act achieves its goals by requiring car
22  companies to promptly repurchase defective vehicles and pay the attorney's fees
23  and costs of prevailing consumers.  Here, over the past thirteen months Plaintiff has
24  and will have incurred $30,737.00 in attorney's fees and $602.65 in costs to enforce
25  her lemon law rights. Kaufman Decl., ¶ 5.  Through this Motion, Plaintiff also
26  seeks a 1.5 multiplier on the award of attorneys' fees, for a total amount of
27  $46,708.15 in fees and costs as the prevailing party.

28

1    This Motion is based upon the concurrently filed Memorandum of Points and

2  Authorities, Declaration of Joseph A. Kaufman, Declaration of Jeffrey L. Le Pere,

3  Plaintiff's Bill of Costs, upon the pleadings herein, the attached exhibits, and upon

4  such evidence, oral and documentary, that may be presented at the hearing.

5

6    Date:   May 3, 2024          **JOSEPH KAUFMAN & ASSOCIATES, INC.**

7

8                                 By: _____

9                                    JOSEPH A. KAUFMAN

10                                   Attorneys for Plaintiff
                                     KRISTY KOHNDROW

-3-

# TABLE OF CONTENT

I.    INTRODUCTION ........................................................................ 1

II.   STATEMENT OF FACTS................................................................ 1

III.  THE PARTIES MET AND CONFERRED PRIOR TO FILING THIS
      MOTION ................................................................................ 3

IV.   ARGUMENT............................................................................... 4

      A. Under both the Song-Beverly Consumer Warranty Act and the
         Offer of Judgment, Plaintiff is Entitled to Recover Reasonable
         Attorney's Fees and Costs .................................................... 4

      B. The Court Should Use the Lodestar Method to Determine

      Plaintiff's Reasonable Attorney's Fees and Costs .......................... 5

           1. Plaintiff's Requested Hourly Rate is Reasonable ................ 6

              a.  The Contingent Nature of the Fee Arrangement Makes
                  Plaintiff's Requested Rate Reasonable .................... 8

              b.  The Skill Displayed by Plaintiff's Attorneys Support the
                  Requested Rate ............................................ 9

           2. The Actual Time Requested is Reasonable........................ 10

      C. The Attorney Fee Award Must Be Based on Actual Time
         Expended in Litigation and Should Not be Bound by the Amount of
         Recovery.......................................................... 13

      D. The Court Should Grant a 1.5 Multiplier Based on the Delay in
         Payment, the Contingent Risk, and the Exemplary Results Obtained........ 14

      E. Plaintiff is Entitled to an Award of Fees and Costs Incurred for
         this Motion and for All Further Work Required to Complete the
         Prosecution of this case .................................................. 16

V.    CONCLUSION ......................................................................... 17

i

# TABLE OF AUTHORITIES

## Cases

*Alfred Ocampo v. BMW of North America, LLC, U.S. Dist. Ct. C.D. Cal., Case No. CV18-2635-FMO (SPx)* ........................................................ 7

*Blackwell v. Foley (N.D. Cal. 2010) 724 F.Supp.2d 1068, 1081* ........................... 10

*Blum v. Stenson (1984) 465 U.S. 886, 895* ............................................................ 6

*Camacho v. Bridgeport Financial, Inc. (9th Cir. 2008) 523 F3d 973, 981* ........................................................................................................................ 16

*Carter v. Caleb Brett LLC, 757 F.3d at 868-869* ..................................................... 9

*Chavez v. Netflix, Inc. (2008) 162 Cal.App.4th 43, 66* ............................................ 15

*City of Burlington v. Dague (1992) 505 U.S. 557, 561* ............................................. 5

*City of Oakland v. Oakland Raiders (1988) 203 Cal.App.3d 78, 85–86* ............... 15

*Combs v. City of Huntington, Tex. (5th Cir. 2016) 829 F3d 388, 396* .................... 13

*Cowan v. Prudential Ins. Co. of America (2nd Cir. 1991) 935 F2d 522, 528* ........................................................................................................... 13

*Doppes v. Bentley Motors, Inc. (2009) 174 Cal.App.4th 967, 997-998* .................. 6

*Etcheson v. FCA US LLC (2018) 30 Cal.App.5th 831, 850* ..................................... 10

*Flitton v. Primary Residential Mortg., Inc. (10th Cir. 2010) 614 F.3d 1173, 1178* ........................................................................................................... 6

*Graciano v. Robinson Ford Sales, Inc. (2006) 144 Cal.App.4th 140, 154.* .......................................................................................................................... 6

*Graham v. DaimlerChrysler (2004) 34 Cal.4th 553, 582* ...................................... 15

*Greene v. Dillingham Construction, N.A., Inc. (2002) 101 Cal.App.4th 418, 428–29* ............................................................................................................... 14

*Hanna v. Mercedes Benz USA, LLC (2019) 36 Cal.App.5th 493, 507* .................... 9

*Hensley v. Eckerhart (1983) 461 U.S. 424, 433-437* ............................................... 5

*Horsford v. Board of Trustees of California State University (2005) 132 Cal.App.4th 359, 396* ..................................................................................... 11

*Jensen v. BMW of North America (1995) 35 Cal.App.4th 112, 138* ........................ 7

*Jose Santana v. FCA US LLC, 4th Appellate District Case No. G057244* ............................................................................................... *15*

*Joseph Valdez v. FCA US LLC, U.S. Dist. Ct. C.D. Cal., Case No. CV19-09009-AB (JEMx)* ........................................................................... *7*

*Ketchum v. Moses (2001) 24 Cal. 4th 1122, 1138* ................................... *14*

*Ketchum v. Moses (2001) 24 Cal.4th 1122, 1135* ..................................... *6*

*La Mesa-Spring Valley School Dist. V. Otsuka (1962) 57 Cal.2d 309, 316* ...... *9*

*Lukather v. General Motors, LLC (2010) 181 Cal.App.4th 1046, 1050* ............... *11*

*Martino v. Denevi (1986) 182 Cal.App.3d 553, 559* ............................... *11*

*Monique Walters v. FCA US LLC, U.S. Dist. Ct. C.D. Cal., Case No. 2:20-CV-00644-AB-JC* ................................................................................ *7*

*Moreno v. City of Sacramento, (9th Cir. 2008) 534 F.3d 1106, 1112* ................... *10*

*Murillo v. Fleetwood Enterprises, Inc. (1998) 17 Cal.4th at 990* ............................ *4*

*Nancy Goglin v. BMW of North America, LLC, et al. (2016) 4 Cal.App.5th 462* ...... *4*

*Perdue v. Kenny A. ex rel. Winn (2010) 559 U.S. 542, 552-553* ............................... *5*

*Rader v. Thrasher (1962) 57 Cal.2d 244, 253* ......................................................... *8*

*Robertson 144 Cal.App.4th, 818-819* ...................................................................... *7*

*Robertson v. Fleetwood Trailers of California, Inc. (2006) 144 Cal.App.4th 785, 817* ...... *5*

*Serrano v. Priest (1977) 20 Cal.3d 25 (Serrano III)* .................................................. *6*

*Serrano v. Priest (1977) 20 Cal.3d 25, 49* ................................................................ *14*

*Serrano v. Unruh (1982) 32 Cal.3d 621* .................................................................... *6*

*Sommers v. Erb (1992) 2 Cal.App.4th 1644, 1651* ................................................... *11*

*Strange v. Monogram Credit Card Bank of Georgia (7th Cir. 1997) 129 F.3d 943, 945* ... *6*

*Trevinu v. Gates (9th Cir. 1996) 99 F.3d 911, 925.* ................................................... *6*

*Warshba v. Apple Computer, Inc. (2001) 91 Cal.App.4th 224, 255* ....................... *15*

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS

1

## <u>Statutes</u>

2

California Civil Code section 1794(d) ............................................................. 2,4,10

Civ. Code § 1794(d) ...................................................................................... 5

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS**

1

## I.   INTRODUCTION

2        This Motion for attorney's fees and costs is brought pursuant to the Song-
3   Beverly Consumer Warranty Act ("Song-Beverly Act" or "Act") after Plaintiff
4   Kristy Kohndrow ("Plaintiff") prevailed on her lemon law claim.   Specifically,
5   Plaintiff accepted Defendant Ford's Rule 68 Offer of Judgment and obtained a
6   Judgment whereby Ford agreed to a full repurchase of the subject vehicle in the
7   amount of $21,678.85, a loan pay-off of $18,852.06, and a civil penalty of
8   $16,034.82, with Ford agreeing to pay Plaintiff's attorney's fees and costs as the
9   prevailing party through a noticed motion before this Court. Kaufman Decl., ¶ 2,
10  Ex. 1-3. Plaintiff has and will incur $30,737.00 in attorney's fees and $602.65 in
11  costs in successfully prosecuting this action. Kaufman Decl., ¶ 5.   With a 1.5
12  multiplier, Plaintiff seeks a total attorney fee and costs award of $46,708.15.

13  ## II.   STATEMENT OF FACTS

14       On February 17, 2021, Plaintiff purchased a 2020 Ford Mustang ("the
15  vehicle"). Declaration of Jeffrey L. Le Pere ("Le Pere Decl."), ¶ 3. After purchasing
16  the vehicle, it began to suffer from serious defects that include, but are not limited
17  to, the engine, transmission, injector, and check engine light. *Id.* Plaintiff presented
18  the vehicle to Ford authorized repair centers on at least 5 separate occasions. These
19  visits resulted in at least 38 days out of service. To date, the vehicle continues to
20  suffer from these nonconformities, and is a lemon.

21      Rather than instantly resorting to litigation, Plaintiff attempted to resolve the
22  issues with Defendant amicably. Le Pere Decl., ¶¶ 4-5. On April 27, 2023, before
23  filing suit, Plaintiff sent a demand letter through counsel to Ford, requesting a
24  repurchase of her vehicle. Le Pere Decl., ¶ 5. Despite the vehicle qualifying for a
25  *prompt* repurchase under the Song-Beverly Act, i.e., within thirty (30) days, Ford
26  failed to promptly repurchase the vehicle. *Id.*  Ford initially assigned the case to the
27  Erskine Law Firm to evaluate and respond to Plaintiff's prelitigation repurchase
28  demand. Kaufman Decl., ¶ 6. Ford, via the Erskine Law Firm, refused to repurchase

1

1   the vehicle and made only a nuisance value settlement offer of $6,500.00, which
2   was rejected. *Id.*

3        With almost two months having passed with Ford failing to repurchase the
4   vehicle, and fearing for her safety, Plaintiff was left with no other option but to
5   initiate her California Superior Court case on June 20, 2023. Le Pere Decl., ¶ 6. The
6   Complaint alleged a breach of both the express and implied warranties under the
7   Song-Beverly Act. *Id.* After the case was filed, Ford assigned the matter to a second
8   law firm, Baker Hostetler. Kaufman Decl., ¶ 6. Ford, via Baker Hostetler, again
9   refused to repurchase the vehicle and made another nuisance value settlement offer
10  which was rejected. *Id.*

11       Ford then assigned a third law firm to handle this matter, Gorden Rees Scully
12  Mansukhani, and they made an improved settlement offer through a Rule 68 Offer.
13  *Id.* The Offer included a full repurchase in the amount of $21,678.85, a loan pay-off
14  of $18,852.06, and payment of a civil penalty of $16,034.82. Kaufman Decl., ¶ 2.
15  Plaintiff considered her options and accepted the Rule 68 Offer of Judgment on
16  February 7, 2024, because it was the best offer made to date, and it provided for the
17  entry of judgment against Ford. *Id.* Simply put, the Rule 68 Offer provided Plaintiff
18  with a repurchase *and* civil penalty damages, and her litigation objectives had been
19  met. Rather than litigate for additional damages, Plaintiff accepted the Rule 68
20  Offer in the hopes of quickly resolving her vehicle problems. This was a significant
21  achievement for Plaintiff, because unlike a settlement agreement, the Judgment did
22  not contain onerous terms like confidentiality and Section 1542 waiver. *Id.* Further,
23  the Judgment confirms that Plaintiff is the prevailing party and includes the
24  payment of attorney's fees and costs via motion with the Court. Kaufman Decl., ¶
25  2, Ex. 1-3.

26       Significantly, Ford could have complied with the lemon law by promptly
27  repurchasing this lemon when it was asked to do so in April 2023, before the case
28  was filed.  Instead, Ford refused to comply with the Song-Beverly Act, and this

-2-

1　lawsuit followed. Ford then needlessly complicated the case by making low-ball

2　settlement offers, changing defense counsel on three occasions, taking the

3　unnecessary step of removing the matter to Federal Court, and further complicated

4　this case by requiring this Motion.

5　　　Plaintiff's attorneys, Joseph Kaufman & Associates, Inc., and the Law Office

6　of Jeffrey L. Le Pere, have billed or will bill a total of $30,737.00 working on this

7　matter, and have incurred costs in the amount of $602.65. Kaufman Decl., ¶ 5, Ex.

8　6; Le Pere Decl., ¶ 2, Ex. A. With a multiplier or fee enhancement of 1.5, the total

9　fees and costs award requested is $46,708.15. Plaintiff made good faith efforts to

10　negotiate and resolve the attorney's fees and costs without this Motion. Kaufman

11　Decl., ¶ 4.　Unfortunately, those efforts were unsuccessful. *Id.* Accordingly,

12　Plaintiff asks that this Court grant this Motion and award Plaintiff $46,708.15 in

13　fees and costs as the prevailing party in this matter.

14　**III. THE PARTIES MET AND CONFERRED PRIOR TO FILING THIS**

15　　　**MOTION**

16　　　On April 2, 2024, the Court entered Judgment in Plaintiff's favor.  On April

17　11, 2024, in seeking to avoid this Motion, Plaintiff engaged in meet and confer

18　efforts with Ford to resolve the fee and cost issue. Kaufman Decl., ¶ 4. Plaintiff

19　wrote to Ford and noted that Plaintiff had incurred $26,760.15 in fees and costs. *Id.*,

20　Ex. 5. Plaintiff further explained that "[t]his doesn't include any time for drafting

21　the fee motion, reviewing Ford's opposition, and preparing a reply brief." *Id.* Later

22　that same day, Ford responded and noted that it would evaluate Plaintiff's request.

23　*Id.*

24　　　On April 12, 2024, Plaintiff and Ford executed and filed a stipulation to

25　extend the deadline for Plaintiff's Motion for Attorney's Fees and Bill of Costs

26　until May 14, 2024. *Id.* On April 16, 2024, the Court entered an Order extending

27　the deadline until May 14, 2024. *Id.*

28

1   On April 30, 2024, Plaintiff met and conferred again regarding the fee/cost
2   issue, writing: "Following up on Plaintiff's meet and confer efforts to resolve the
3   attorney fee and cost issue short of a motion. Please let us know ASAP if Ford will
4   agree to pay our fees and costs, or if we should proceed with the filing of our
5   motion." *Id.* Ford made no substantive response to Plaintiff's meet and confer
6   efforts, necessitating the filing of this motion. *Id.*

7   Having obtained a judgment on Plaintiff's behalf, Plaintiff is entitled to be
8   paid her attorney's fees and costs as the prevailing party. Accordingly, Plaintiff
9   brings this Motion to recover her attorney's fees and costs.

## IV.  ARGUMENT

### A.  Under both the Song-Beverly Consumer Warranty Act and the Offer of Judgment, Plaintiff is Entitled to Recover Reasonable Attorney's Fees and Costs

14   Plaintiff's Complaint was pursued and ultimately resolved based on the Song-
15   Beverly Act and the judgment. Under the Act, the prevailing buyer "*shall* be
16   allowed by the court to recover as part of the judgment a sum equal to the aggregate
17   amount of costs and expenses, *including attorney's fees based on actual time*
18   *expended*, determined by the Court to have been reasonably incurred by the buyer
19   in connection with the commencement and prosecution of such action." *Civ. Code*
20   § 1794(d) (emphasis added); *see also Nancy Goglin v. BMW of North America,*
21   *LLC, et al.* (2016) 4 Cal.App.5th 462. In conjunction with the Act, the judgment
22   explicitly provides that Plaintiff is entitled to recover her reasonable attorney's fees
23   and costs by noticed motion. As such, the Court should look to the Song-Beverly
24   Act in determining the recoverable amount of Plaintiff's attorney's fees and costs.

25   The Act is a manifestly remedial measure intended to protect the consumer,
26   and it should be given a construction calculated to bring its benefits into action.
27   See *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th at 990. In *Murillo,*

28

the California Supreme Court endorsed the central role that the payment of attorney's fees and costs play in achieving the purposes of the Act:

> By permitting prevailing buyers to recover their attorney's fees in addition to costs and expenses our Legislature has provided injured consumers strong encouragement to seek legal redress in a situation in which a lawsuit might not otherwise have been economically feasible.

*Id.* at 994.

Moreover, in making this endorsement, the Court sought to open the courtroom doors to consumers who could not otherwise afford to pay for attorneys to litigate such cases on a non-contingent basis, as the fees and costs would easily exceed a consumer's recovery if they prevailed.  See *Jensen v. BMW of North America* (1995) 35 Cal.App.4th 112, 138.  This fee shifting provision also levels the playing field by discouraging manufacturers from attempting to use their superior resources to force consumers into inadequate settlements.  Thus, to promote the underlying purpose of protecting consumers from defective products, this Court should approve the attorney's fees and costs in full for the time expended and the expenses incurred in this case.  Civ. Code § 1794(d); *Murillo*, 17 Cal.4th at 994; *Robertson v. Fleetwood Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 817.

### B. The Court Should Use the Lodestar Method to Determine Plaintiff's Reasonable Attorney's Fees and Costs

To determine a "reasonable attorney fee award, district courts generally start by calculating the lodestar amount, meaning the product of multiplying the number of hours reasonably expended on the litigation by a reasonable hourly fee."  See *Hensley v. Eckerhart* (1983) 461 U.S. 424, 433-437; *City of Burlington v. Dague* (1992) 505 U.S. 557, 561; *Perdue v. Kenny A. ex rel. Winn* (2010) 559 U.S. 542, 552-553. The lodestar method is also the prevailing method of awarding

-5-

1  attorney fees in Song-Beverly Act and California cases. See *Robertson* 144
2  Cal.App.4th, 818-819; see also *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1135
3  (California Supreme Court endorsing the lodestar method as the prevailing method
4  for statutory fee awards); *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th
5  967, 997-998; *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140,
6  154.

7      The fee applicant bears the initial burden of substantiating the hours worked
8  and the rate claimed. *Strange v. Monogram Credit Card Bank of Georgia* (7th Cir.
9  1997) 129 F.3d 943, 945; see also *Flitton v. Primary Residential Mortg., Inc.* (10th
10  Cir. 2010) 614 F.3d 1173, 1178. However, plaintiff's counsel is not required to
11  record in great detail how each minute of time was expended. *Flitton,* 614 F.3d at
12  1178 (2010).

13      **1.    Plaintiff's Requested Hourly Rate is Reasonable**

14      The lodestar method involves "careful compilation of the time spent and
15  reasonable compensation for each attorney. *Serrano v. Priest* (1977) 20 Cal.3d 25
16  (*Serrano III*); see also *Serrano v. Unruh* (1982) 32 Cal.3d 621. Both the United
17  States Supreme Court and the California Supreme Court have held that lodestar fee
18  rates are "calculated according to the prevailing market rates in the relevant
19  community." *Blum v. Stenson* (1984) 465 U.S. 886, 895; *Ketchum,* 24 Cal.4th at
20  1133. The proper reference point in determining an appropriate fee award is the
21  rates charged by private attorneys in the same legal market as the prevailing
22  counsel. *Trevinu v. Gates* (9th Cir. 1996) 99 F.3d 911, 925.

23      Plaintiff has established the reasonableness of her requested rates through a
24  declaration establishing the rates of several California attorneys who specialize in
25  lemon law cases in the same market. Kaufman Decl., ¶ 15. These attorney's rates
26  range from $595.00 to $850.00 per hour. *Id.* The effective hourly rate of some
27  defense attorneys who handle lemon law cases on hybrid rate structures is even
28  higher. Kaufman Decl., ¶ 12. The hourly rates requested by Shareholder Joseph

-6-

1   Kaufman ($595.00), co-counsel Jeffrey Le Pere ($600.00), Senior Counsel J. Brian
2   Lynn ($475.00), paralegal Jonny Masri ($175.00), and paralegal Melissa Lopez
3   ($175.00) are at or below prevailing market rates and should not be reduced by this
4   Court.

5   Mr. Kaufman's declaration also cites twenty-three (23) cases where his hourly
6   rates were approved as reasonable, including four (4) recent cases where his 2023
7   and 2024 hourly rate of $595 was approved. Kaufman Decl., ¶ 11. Other California
8   federal courts approved Plaintiff's counsel's 2019 and 2020 hourly rates as
9   reasonable. See *Monique Walters v. FCA US LLC*, U.S. Dist. Ct. C.D. Cal., Case
10  No. 2:20-CV-00644-AB-JC (approving Joseph Kaufman's 2020 hourly rate of
11  $575.00); *Joseph Valdez v. FCA US LLC*, U.S. Dist. Ct. C.D. Cal., Case No. CV19-
12  09009-AB (JEMx) (approving Joseph Kaufman's 2020 hourly rate of $575.00 and
13  2019 hourly rate of $515.00); *Alfred Ocampo v. BMW of North America, LLC*, U.S.
14  Dist. Ct. C.D. Cal., Case No. CV18-2635-FMO (SPx) (approving Joseph
15  Kaufman's 2019 hourly rate of $515.00 and 2018 hourly rate of $505.00). *Id.*

16  Mr. Kaufman's declaration offers additional evidence confirming the
17  reasonableness of the requested rates. Mr. Kaufman's declaration establishes the
18  following: (1) He has a twenty-plus-year career handling these matters; (2) He has
19  given numerous presentations to various groups on the subject matter; (3) He has
20  authored several articles on lemon law and related issues; (4) He has extensive
21  consumer law experience, including his handling of thousands of lemon law cases
22  and/or claims; and (5) He has had personal involvement in more than fifty (50)
23  matters that went to trial or arbitration, and countless others that settled on the eve
24  of arbitration/trial. Kaufman Decl., ¶¶ 7-9, 12.

25  Plaintiff's co-counsel, Jeffrey Le Pere, similarly provided a declaration that
26  confirms the reasonableness of his rates. His declaration establishes: (1) his more
27  than twenty years of experience as both a plaintiff-side and defense-side consumer
28  law attorney, representing several auto manufacturers and consumers in lemon law

-7-

cases; (2) his consumer law teaching experience at Trinity Law School; (3) his experience training Porsche service managers on the lemon law; (4) his speaking engagements regarding consumer law; (5) the approval of his rates in prior cases; and (6) his subsequent establishment of his own plaintiff-side consumer law firm. Le Pere Decl., ¶¶ 8-15.

Accordingly, the rates requested by Plaintiff's attorneys in this case are well-supported based on their extensive experience. Further, the hourly rates are either similar to or less than other attorneys in the market, making them reasonable in light of the results obtained and the expertise that each attorney displayed.

### a.   The Contingent Nature of the Fee Arrangement Makes Plaintiff's Requested Rate Reasonable

Plaintiff's attorneys took this case on a contingency basis, paid all costs and expenses associated with it on behalf of Plaintiff, and assumed the full risk of the loss of these costs/expenses and time expended. Kaufman Decl., ¶ 13. In the legal marketplace, an attorney whose compensation is dependent on success and who takes significant risk should expect to receive a higher fee than an attorney who is paid at an hourly market rate regardless of the case's outcome. *Rader v. Thrasher* (1962) 57 Cal.2d 244, 253. The California Supreme Court in *Ketchum* reaffirmed these principles by citing *Rader* and stating, "[a] contingent fee contract, since it involves a gamble on the result, may properly provide for a larger compensation than would otherwise be reasonable." *Ketchum*, 24 Cal.4th at 1132.

In this case, Ford willfully refused to repurchase Plaintiff's vehicle. Plaintiff contacted Ford prior to filing suit and requested a repurchase of the vehicle via a written demand letter. Le Pere Decl., ¶ 5. Rather than comply with its obligations under the law, Ford rejected Plaintiff's good faith efforts to resolve her issues short of litigation. *Id.* Thus, Plaintiff was left with no choice but to file suit and advocate for her rights under the Song-Beverly Act.

After Plaintiff's claim was filed, Ford made a low-ball, nuisance value, settlement offer. Kaufman Decl., ¶ 6. Accordingly, Plaintiff was forced to continue litigating the case, and the attorney's fees and costs continued to rise, all while facing the very real possibility that these fees and costs would never be recovered. Furthermore, while all three of Ford's law firms were regularly paid for their time expended on this case, Plaintiff's attorneys continued to absorb fees and costs without any form of payment for their services. If Plaintiff failed to prevail, her attorneys would have suffered a loss of several hours of uncompensated work and out of pocket expenses. Thus, the factors set forth in both *Serrano* and *Hensley*, and the holdings in both *Ketchum* and *Rader*, support Plaintiff's position that the inherent risk associated with the contingent fee arrangement makes Plaintiff's requested rates reasonable.

### b. The Skill Displayed by Plaintiff's Attorneys Support the Requested Rate

A court may take into account the skill of the attorneys when determining the reasonable attorney's fees. *La Mesa-Spring Valley School Dist. V. Otsuka* (1962) 57 Cal.2d 309, 316; *Hensley,* 461 U.S. at 430-434; *Carter v. Caleb Brett LLC,* 757 F.3d at 868-869; see also *Hanna v. Mercedes Benz USA, LLC* (2019) 36 Cal.App.5th 493, 507 (holding that the skill exhibited, and the results achieved, supported an attorney's requested rates).

In this case, Plaintiff's recovery was a direct result of the expertise and knowledge displayed by Plaintiff's attorneys. Ford refused to promptly repurchase the vehicle, ignoring the severity of the service history and mechanical defects. Once Ford finally made a reasonable Offer of Judgment, Plaintiff promptly accepted.

Furthermore, where a party continues to litigate after receiving a settlement offer, absent a finding that failure to resolve the case through negotiation was unreasonable or solely attributable to counsel's desire to generate more fees,

-9-

1    additional fees incurred to establish liability or damages, including evidence of
2    willfulness necessary to recover civil penalties, are properly included in an award of
3    fees under Civil Code section 1794(d). See *Hanna*, 36 Cal.App.5th at 508; see also
4    *Etcheson v. FCA US LLC* (2018) 30 Cal.App.5th 831, 850 (holding that "plaintiffs
5    obtained more in their final settlement than the earlier straight restitution settlement
6    offer made by FCA" and that "their litigation activities in pursuit of that result
7    cannot be said to be unreasonably spent"). Plaintiff's counsels' efforts led to a
8    greater recovery than the initial offer (not including Plaintiff's attorneys' fees and
9    costs), including a full repurchase, loan payoff, and civil penalty, all while
10   garnering an admission of liability and the entry of judgment against Ford.
11   Plaintiff's attorneys' experience and skills provided an exemplary result that Ford
12   was initially unwilling to entertain. Accordingly, the skill displayed by Plaintiff's
13   attorneys support the requested rate.

14                    **2.    The Actual Time Requested is Reasonable**

15          The Court should defer to the winning lawyer's professional judgment as
16   to how much time he was required to spend on the case. *Moreno v. City of
17   Sacramento*, (9th Cir. 2008) 534 F.3d 1106, 1112. An attorney's sworn testimony
18   that he took the time claimed is entitled to considerable weight on the issue of the
19   time required. *Blackwell v. Foley* (N.D. Cal. 2010) 724 F.Supp.2d 1068, 1081. To
20   reduce the number of hours worked, it must appear that the time claimed is
21   obviously and convincingly excessive under the circumstances. *Id.*; see also
22   *Moreno*, 534 F.3d at 1116.

23          Here, Plaintiff's moving papers and declarations show that her counsel
24   effectively and efficiently handled this matter. Kaufman Decl., ¶ 16; Le Pere Decl.,
25   ¶ 2. Further, Plaintiff's counsel exercised billing judgment by reducing the total
26   billing for much of the work it performed to account for any inefficiencies. *Id.*

27          Moreover, it cannot be overstated that Ford refused to help Plaintiff
28   before a lawsuit was even filed, Ford delayed the case by changing counsel multiple

times, and made multiple insufficient and unreasonable settlement offers until it finally made a Rule 68 Offer. Further, Ford refused to pay Plaintiff's reasonably incurred fees and costs, necessitating this Motion. The Song-Beverly Act imposes on manufacturers "an affirmative duty to replace a vehicle or make restitution to the buyer if the manufacturer is unable to repair the new vehicle after a reasonable number of repair attempts." *Lukather v. General Motors, LLC* (2010) 181 Cal.App.4th 1046, 1050. The buyer need not reject or revoke acceptance of the vehicle at any time. *Id.* Despite no obligation to do so here, Plaintiff requested a repurchase from Ford, but it rejected Plaintiff's requests. A party cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response. *Serrano*, 32 Cal.3d at 638. Ford failed to promptly repurchase the subject vehicle. Having ignored its legal responsibilities under the Song-Beverly Act, Ford cannot reasonably complain about the time billed by Plaintiff's attorneys. See *Hanna*, 36 Cal.App.5th at 508; see also *Etcheson*, 30 Cal.App.5th at 850.

Lastly, nothing under the law requires the submission of time records to prove the number of hours reasonably expended in litigation. See *Martino v. Denevi* (1986) 182 Cal.App.3d 553, 559; *Sommers v. Erb* (1992) 2 Cal.App.4th 1644, 1651. Nonetheless, Plaintiff submitted detailed time records for all persons who have worked on this matter throughout the course of the litigation. Kaufman Decl., ¶ 5, Ex. 6; Le Pere Decl., ¶ 2, Ex. A. The time slips submitted were contemporaneously entered, reflect the actual time expended, and contain a description of the services performed. *Id.* More importantly, they show that the hours requested were not duplicative, redundant, or unnecessary. *Id.* The billing is strictly limited to the work reasonably incurred in connection with the prosecution of this case. *Id.* As such, the records are entitled to credence in the absence of a clear indication that the records are erroneous. See *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 396.

-11-

1    As explained above and in the accompanying declarations, the hourly rates
2    and time billed by Plaintiff's counsel in this case are reasonable. The following is a
3    summary of the work performed:

4        • Joseph Kaufman (JK) - $595/hour. Mr. Kaufman is an attorney with
5          over twenty years' experience. He was the primary attorney on the
6          matter and billed 35.6 hours setting case evaluation, settlement, and
7          discovery strategies. Kaufman Decl., ¶ 16.

8        • Jeffrey Le Pere (IA) - $600/hour. Mr. Le Pere has been practicing law
9          for over twenty years. He billed 12.3 hours. He assisted with the initial
10         stages of litigation up to and including the acceptance of the Rule 68
11         Offer.

12       • J. Brian Lynn (BL) - $475/hour. Mr. Lynn is an attorney with over
13         seventeen years' experience, and he billed 2.0 hours conducting legal
14         research and preparing a stipulation.

15       • Melissa Lopez (ML) - $175/hour. Ms. Lopez is a paralegal with three
16         years' experience, and she billed 5.5 hours on paralegal tasks, mostly
17         related to completion of the settlement, drafting discovery requests,
18         and drafting the initial complaint.

19       • Jonny Masri - $175/hour (JM).  Mr. Masri is a legal assistant with
20         eight years' experience, and he billed 1.5 hours assisting with this
21         matter.

22   Kaufman Decl., ¶ 16.

23   Plaintiff's counsel has spent 56.9 total hours on this matter and has billed
24   $30,737.00 in the course of handling this case. Kaufman Decl., ¶ 5; Le Pere Decl., ¶
25   2. To bill only 56.9 total hours in a representation lasting thirteen months
26   demonstrates reasonableness and efficiency in billing.  While manufacturers often
27   make accusations of inflated billing when opposing fee motions, the same cannot be
28   said here considering that Plaintiff's counsel has billed an average of less than 5

-12-

1  hours per month on this matter since inception. As set forth in the accompanying
2  declarations, Plaintiff has further incurred $602.65 in costs. *Id.* Given the work that
3  went into successfully prosecuting this case on behalf of Plaintiff, the time and
4  expenses are reasonable and necessary.

5          **C.   The Attorney Fee Award Must Be Based on Actual Time Expended**
6               **in Litigation and Should Not be Bound by the Amount of Recovery**

7          Both state and federal law hold that there is no requirement that an attorney
8  fee award be proportional to the amount of damages recovered. *Cowan v.*
9  *Prudential Ins. Co. of America* (2nd Cir. 1991) 935 F2d 522, 528; *Combs v. City of*
10 *Huntington, Tex.* (5th Cir. 2016) 829 F3d 388, 396. In fact, with respect to lemon
11 law cases, Courts have rejected the notion that the fee award must be proportionate
12 to the amount of damages recovered. In *Graciano*, the Court noted that "because
13 this matter involves an individual plaintiff suing under consumer protection statutes
14 involving a mandatory fee-shifting provision, the legislative policies are in favor of
15 [Plaintiff's] recovery of all attorney fees reasonably expended, without limiting the
16 fees to a proportion of her actual recovery." *Graciano* 140 Cal.App.4th at 164; *see*
17 *also Robertson,* 144 Cal.App.4th at 817-823, where the Court rejected the argument
18 that a six-figure attorney fee award under Song-Beverly was excessive in light of
19 the modest consumer recovery.

20         Without fee shifting statutes, most consumers would be left with no recourse
21 to enforce their rights against disproportionately funded manufacturers like Ford.
22 California's legislature was aware of these concerns when they drafted the Song-
23 Beverly Act. See *Murrillo* Cal.4th at 989 ("by permitting prevailing buyers to
24 recover their attorney's fees in addition to costs and expenses, our legislature has
25 provided injured consumers strong encouragement to seek redress in a situation in
26 which a lawsuit might not otherwise have been economically feasible"). Based on
27 the foregoing, the proportionality of Plaintiff's recovery to the requested attorneys'

28

-13-

1   fees and costs should not be considered when determining Plaintiff's attorney fee
2   and cost award.

3       **D.   The Court Should Grant a 1.5 Multiplier Based on the Delay in**
4            **Payment, the Contingent Risk, and the Exemplary Results Obtained**

5       State and federal courts both recognize that a lodestar may be enhanced by
6   various factors. The factors courts consider in awarding a multiplier include the
7   results obtained in the litigation, the novelty and difficulty of the issues, the skill of
8   counsel, the extent to which the nature of the litigation precluded other employment
9   by the attorneys, the contingency risk, and the delay in payment of fees. *Serrano v.*
10  *Priest* (1977) 20 Cal.3d 25, 49; see also *Perdue,* 559 U.S. at 556. The California
11  Supreme Court has endorsed the use of contingency multipliers to "approximate
12  market-level compensation" for attorney services, "which typically includes a
13  premium for the risk of nonpayment or delay in payment of attorney fees."
14  *Ketchum v. Moses* (2001) 24 Cal. 4th 1122, 1138. A trial court commits reversible
15  error when it refuses to consider awarding a contingency multiplier. *Greene v.*
16  *Dillingham Construction, N.A., Inc.* (2002) 101 Cal.App.4th 418, 428–29.

17      These factors support a multiplier here. First, Plaintiff's counsel obtained an
18  excellent result in a case where Ford refused Plaintiff's pre-litigation repurchase
19  request. Plaintiff not only obtained the repurchase she sought in the Complaint, but
20  she also secured a judgment against Ford that included civil penalty damages. This
21  was a significant achievement, because unlike a settlement, the judgment does not
22  include onerous terms such as section 1542 waiver and confidentiality.

23      Additionally, the Court should consider the contingent risk that Plaintiff's
24  attorneys undertook in pursuing this case. Plaintiff's counsels' recovery of fees was
25  based purely on the possibility of success, and in litigation success is never assured.
26  Like the other factors discussed above, the contingent risk element is not built into
27  Plaintiff's counsels' hourly rates which, as noted, are below market.

28

-14-

1    The delay in payment here is another reason justifying a multiplier. Plaintiff's
2    counsel has been handling this matter for more than thirteen months and
3    demonstrated efficiency by billing only 56.9 hours during that time. Plaintiff's
4    attorneys were not paid during that period, and that delay in payment justifies a
5    multiplier.

6    The California Court of Appeal has recognized that where the factors relevant
7    to a multiplier are satisfied, typically "[m]ultipliers can range from 2 to 4 or even
8    higher." *Warshba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 255;
9    *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 66 (providing multiplier of 2.5
10   based on quality of representation and success achieved was not "out of line with
11   prevailing case law"); *City of Oakland v. Oakland Raiders* (1988) 203 Cal.App.3d
12   78, 85–86 (affirming multiplier of 2.34 based on "the extraordinary novelty and
13   complexity of the issues presented, . . . the deferral of payment of counsel's fees,"
14   and result obtained).    In California lemon law cases, the results obtained can
15   properly be used to enhance a lodestar calculation where an exceptional effort
16   produced an exceptional benefit. See *Jose Santana v. FCA US LLC*, 4th Appellate
17   District Case No. G057244, which cites the Court's holding in *Graham v.*
18   *DaimlerChrysler* (2004) 34 Cal.4th 553, 582.

19   It bears emphasis that, in asking for a multiplier, Plaintiff is not seeking a
20   windfall. "The adjustment to the lodestar figure, e.g., to provide a fee enhancement
21   reflecting the risk that the attorney will not receive payment if the suit fails,
22   constitutes earned compensation; unlike a windfall, it is neither unexpected nor
23   fortuitous. Rather, it is intended to approximate market-level compensation for such
24   services, which typically includes a premium for the risk of nonpayment or delay in
25   payment of attorney fees." *Ketchum*, at 24 Cal.4th at 1138. An upward lodestar
26   adjustment is necessary to properly account for the difficulty of this case, Plaintiff's
27   attorneys' opportunity costs, the delay in payment, the contingent risk, and the fact
28

-15-

1    that the lodestar request is based on lower than customary rates. Accordingly,
2    Plaintiff respectfully requests that a multiplier of 1.5 be applied to the lodestar.

3    **E.    Plaintiff is Entitled to an Award of Fees and Costs Incurred for this**
4    **Motion and for All Further Work Required to Complete the**
5    **Prosecution of this Case**

6    Both state and federal courts hold that an attorney's fee award generally
7    includes the time spent preparing and litigating a motion to obtain the award. See
8    *Camacho v. Bridgeport Financial, Inc.* (9th Cir. 2008) 523 F3d 973, 981; *Ketchum,*
9    24 Cal.4th at 1141. In *Ketchum*, the Court stated that a fee award should "include
10   compensation for all hours reasonably spent, *including those necessary to establish*
11   *and defend the fee claim.*" *Id.* (emphasis added).

12   Further, the Judgment explicitly provides that "Plaintiff may recover for
13   attorney fees and costs reasonably and actually incurred in bringing such a fee/cost
14   motion(s)." Kaufman Decl., ¶ 2, Ex. 1.

15   Plaintiff's attorneys should not be penalized for having to file this Motion to
16   collect what they are entitled to by statute and by the Offer of Judgment. As such,
17   Plaintiff's fees and costs award should include all time expended on this matter,
18   including this Motion, the anticipated time spent on reviewing Ford's opposition,
19   preparation of a reply, and appearance at the corresponding hearing. Kaufman
20   Decl., ¶ 5. Ford's attorneys will be paid for their work, and it is only fair that
21   Plaintiff be paid as well.

22   Similarly, Plaintiff anticipates that an additional six (6) hours of work will be
23   expended in the course of completing the prosecution of the case. Kaufman Decl., ¶
24   5. This accounts for the completion of remaining settlement issues, including
25   coordination of and attendance at the vehicle surrender; communications and
26   coordination with Defendant's surrender agent; communications and coordination
27   with the assigned local agent; communications with the client regarding the
28   remaining issues; ensuring that the settlement amount is paid; preparing and filing

-16-

the satisfaction of judgment; preparing and filing the dismissal; and any other remaining issues. *Id.* Like the fees and costs associated with defending this Motion, Ford's counsel's fees and costs will be paid for all of the remaining items listed here. Accordingly, Plaintiff requests that she be compensated for the same.

## V.   CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests an order for an attorney fee award in the amount of $46,105.50, and costs/expenses in the amount of $602.65.

| | |
|---|---|
| Lodestar Fees | $30,737.00 |
| **Total Fees with 1.5 Multiplier** | $46,105.50 |
| Costs | $602.65 |

Date: May 3, 2024          **JOSEPH KAUFMAN & ASSOCIATES, INC.**


By: _____
JOSEPH A. KAUFMAN
Attorneys for Plaintiff
KRISTY KOHNDROW

-17-

1

## CERTIFICATE OF SERVICE

2

3

4    I hereby certify that on May 3, 2024, I filed the foregoing document entitled

5    **PLAINTIFF KRISTY KOHNDROW'S MOTION FOR $46,708.15 IN**

6    **ATTORNEY'S FEES AND COSTS** with the clerk of court using the CM/ECF

7    system, which will send a notice of electronic filing to all counsel of record in this

8    action.

9                                 /s/ Dulce Rojas

10    _____
                                 Dulce Rojas

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28